**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0736n.06
Filed: December 3, 2008

**No. 07-3808**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Carolyn R. Russell | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| State of Ohio, Department of Administrative | ) | SOUTHERN DISTRICT OF OHIO |
| Services; George Hess | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: NORRIS, ROGERS, and KETHLEDGE, Circuit Judges.**

**ROGERS, Circuit Judge.** Carolyn Russell, proceeding pro se, appeals the district court's grant of summary judgement in her employment discrimination suit against the Ohio Department of Administrative Services ("ODAS") and her supervisor George Hess. Russell brought this civil rights suit under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that her employer failed to reclassify or promote her because of her race, retaliated against her for filing an EEOC claim, and fostered an environment of hostility and social ostracism in the workplace. Although Russell appears to have had a number of disappointing, negative, and even unfair experiences in her workplace, she did not demonstrate that similarly situated individuals of other races were treated differently from her. She also did not demonstrate that the conditions in her

workplace were sufficiently objectionable or racially motivated to constitute retaliation or a hostile work environment. Summary judgment in favor of the defendants was appropriate in this case.

**I.**

Ms. Russell is a high school graduate with two years of post-secondary education in business management and accounting. She began her career with the State of Ohio in 1962 performing various clerical functions. She began working for the Division of Equal Employment Opportunity, a division of ODAS, in 1972 and was promoted to Administrative Assistant 2 ("AA2") in 1973. Russell was still classified as an AA2 at the time of this suit. Russell began working for Ohio's Minority Set Aside Review Board in 1986, and in 1995 came under the direct supervision of the Board's director, Sandra Drabik. Russell, believing her job responsibilities to be more extensive that those of an AA2, made several unsuccessful requests that Drabik reclassify her. Some time thereafter, Joyce Tyler-Craddock, an African-American, began supervising Russell. Russell again made an unsuccessful request for reclassification.

In 1997, Russell filed a complaint against Drabik and Craddock with the EEOC. After the EEOC denied relief, Russell unsuccessfully pursued her claim in the federal district and appellate courts. Russell was transferred from the Minority Set Aside Review Board to the Division of Computer Services several weeks after she filed her EEOC complaint. Russell still works for that division, currently known as the Office of Technology Services Delivery Division ("ITSD").

Defendant George Hess began supervising Russell in 2000. According to Russell, Hess put her in charge of all personnel functions, which involved coordinating the hiring process, being a liaison between managers and the department's personnel office, and responding to questions from bargaining unit employees. Hess updated Russell's position description on June 19, 2002, but Russell alleges that he excluded the higher-level functions she performed.

In July 2002, Hess consolidated five divisions, including Russell's, into a single division. Russell continued to perform the same duties for the combined division under the classification AA2. Around this time, she once again began to work under Joyce Tyler-Craddock, who had since become the Assistant Deputy Director of ITSD. In early 2003, Russell began seeking an upgraded classification within her AA class series. Craddock sent Russell's position description to the Office of Employment Services for review, and that office notified Craddock that Russell was properly classified. Craddock presented the results of the review to Hess, and they determined that Russell should not be reclassified. Hess met with Russell on April 4, 2003, to discuss the decision not to upgrade her. Russell sent Hess an e-mail the same day expressing her belief that she had not been advanced for the past thirty years because of racial discrimination. Ohio law provides that a state employee may request an audit of her classification. Ohio Admin. Code 123:1-3-01(J); Ohio Rev. Code § 124.14(D). Russell said she did not pursue this avenue because she felt it would be futile to expect a job analyst to disagree with the Deputy Director and because she knew of audits that had resulted in downward reclassification.

In July 2002, Lisa Barbee, a white female, was reclassified from Training Supervisor to AA4. The reclassification was lateral and did not affect Barbee's pay range. The AA4 position was specifically in the area of security coordination and construction. According to Hess, Barbee was reclassified so that her job description would more accurately match her actual duties. Russell admits that she would not have received that AA4 position as described, because she was not qualified. She alleges, however, that Barbee's new position description did not match her actual duties and that Russell was competent to perform Barbee's actual duties. Russell believes that reclassifying Barbee's position without posting the position for competitive bid denied Russell an opportunity for a promotion.

Around May 2003, Angela Weis, a white female, joined ITSD as an AA3. Weis formerly held an AA3 position in a different division that was experiencing layoffs. Weis transferred to Russell's division, although no open AA3 position had been posted. Hess approved the transfer. Russell believes that if the position had been posted for application, she would have been qualified to apply. She therefore sees Weis's transfer as another missed opportunity for promotion.

Russell alleges that in July 2003, Hess again revised Barbee's position description and made her his personal assistant—a job Russell had repeatedly expressed interest in and believed she was qualified to perform. She was not, however, given a chance to bid for the position, because Hess did not post it.

On September 29, 2003, ODAS posted an opening in ITSD for a Management Analyst Supervisor 2. The job included position specific minimum qualifications ("PSMQs"). Russell was interested in the job, but she did not apply because the PSMQs disqualified her. Russell believes the PSMQs were extraneous to the job and that Hess added them specifically to prevent her from applying. Craddock stated that she worked with the Office of Employee Services to add the PSMQs in order to narrow what was otherwise a very broad job description to a description more tailored to the requirements of the position. Craddock and Hess selected Patty Magazine, a white female, for the position in January 2004. Russell alleges that after Magazine was hired, Craddock transferred all of Russell's higher-level duties to Magazine. Russell claims that she thereafter worked under Magazine performing clerical functions that were below Russell's AA2 classification.

Russell filed a formal complaint with the EEOC on June 2, 2004, accusing ODAS of racial discrimination and retaliation, and naming Hess and Craddock in the body of the complaint. Around the same time, she noted several occurrences which she believes were further instances of discrimination and/or retaliation for filing her claim. Since 1997, Russell had worked four ten-hour days per week. In May 2004, Magazine informed Russell that Russell's schedule was being changed to five eight-hour days. When Russell requested to keep her former schedule, Magazine explained that all Business Support Services personnel were now required to work during regular business hours. Russell informed Magazine, Craddock, and Hess that she believed the treatment was inequitable, because several other employees with whom Russell worked were allowed to maintain

their non-standard schedules. Various superiors responded to Russell's requests by telling her that those other employees were not Business Support Services personnel.

During the summer of 2004, Russell wrote three letters concerning Craddock—two to the Office of the Ohio Inspector General and one to the EEOC. On July 23, 2004, prior to Russell's second letter to the Inspector General, Craddock sent a memorandum to the ODAS Human Resources Administrator asking for "appropriate action to put a stop to this harassment." ODAS issued a finding on January 26, 2005, that Russell had a right to file complaints with the Office of the Inspector General and the EEOC. The Deputy State Chief Information Officer also issued a memo to both women on April 20, 2005, regarding "performance expectations," urging them to treat each other professionally and to perform their jobs in a manner consistent with the company's policy that managers should treat employees fairly and that employees should obey the instructions of managers.

Several other occurrences have made Russell uncomfortable in her workplace. The ODAS investigation report revealed that several of Russell's co-workers avoid her. On January 10, 2007, Magazine issued a written memorandum with the title "verbal reprimand" to be placed in Russell's file because Russell completed an assignment late. Russell suggests that this level of discipline for missing a deadline is not typical for the office. Russell also alleges that Magazine requires Russell to leave the office precisely at the end of her workday, but that Magazine does not place such a condition on any other employee.

The EEOC dismissed Russell's charges on November 15, 2004, and she filed suit in the district court on February 11, 2005. She also petitioned for injunctive relief on January 11, 2007, based on allegations of continuing harassment and retaliation in the workplace. The district court granted ODAS's motion for summary judgment and denied Russell's petition on June 14, 2007. Russell now appeals.

## II.

As an initial matter, some of Russell's claims are time barred. Russell filed her action with the EEOC on June 2, 2004. In a "deferral" state such as Ohio, any instance giving rise to a Title VII claim must have occurred within 300 days of that date, meaning after August 7, 2003. *See Amini v. Oberlin College* 259 F.3d 493, 498 (6th Cir. 2001). Russell filed her suit in federal court on February 11, 2005. Any instance giving rise to a 42 U.S.C. § 1983 claim must have occurred within two years of that date, meaning after February 11, 2003. Therefore, Russell's claims stemming from Barbee's reclassification as an AA4 in July 2002 are time barred under both statutes. Russell's claims stemming from her denied reclassification in April 2003, Weis's transfer as an AA3 in June 2003, and Barbee's revised position description in July 2003 may only proceed as § 1983 claims against Hess. All the other claims that are not based on retaliation may proceed as § 1983 claims against Hess and as Title VII claims against ODAS. Claims based on retaliation for filing an EEOC charge may only proceed under Title VII. *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984).

The continuing violation doctrine cannot be used to extend the statute of limitations in this case, because Russell alleges discrete acts of discrimination. Russell has not alleged a past violation that continues into the present, such as unequal pay that continues to be paid unequally. *See EEOC v. Penton Indus. Publ'g. Co.*, 851 F.2d 835, 838 (6th Cir. 1988). Rather, she has alleged a number of discrete situations where her employer made an adverse decision regarding her employment status. She cannot use the fact that some of the claims fall within the statute of limitation to redeem those claims that do not. Courts have recognized "two narrowly limited exceptions" to the general policy that the statute of limitations for an act of employment discrimination runs from the time the act occurred: (1) where some present discriminatory action gives rise the claim and (2) where the employer has a long-standing policy of discrimination. *Id.* at 837-38. Regarding the first exception, the Supreme Court cautions that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In other words, Russell cannot use the continuing violation doctrine to extend the statute of limitations on discrete, defaulted claims. As for the second exception, Russell is not challenging an official policy of her employer.

Discrimination under § 1983 and discrimination under Title VII are both proved through the *McDonnell Douglas* framework, so the claims will be addressed together. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988).

**A.**

Russell does not survive summary judgment on any of her discrimination claims, because she does not demonstrate several necessary elements. Most significantly, she does not demonstrate that any of the actions taken by her employer or conditions present in her office were linked to her race. We review the district court's grant of summary judgment de novo, drawing all inferences in favor of Russell. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment must be entered against a party who, like Russell, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In her failure to reclassify claim, Russell may be able to show that her job duties qualified her for reclassification, but she does not present appropriate comparators to show that similarly situated non-minorities were treated differently. To establish a prima facie case of employment discrimination under the familiar *McDonnell Douglas* standard, Russell must show: "(1) [s]he was a member of a protected class; (2) that [s]he suffered an adverse employment action; (3) that [s]he was qualified for the position; and (4) that a person outside the protected class was treated more favorably than [she was]." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). Although Russell satisfies the first two prongs and may be able to establish a genuine issue of fact as to the third, she does not satisfy the fourth prong.

Applying the third prong to the specific situation of reclassification, Russell may be able to show that she performed job duties more advanced than those covered by her job description and, therefore, that she was qualified for reclassification. Russell, who is classified as an AA2, alleges that she performed various high-level tasks, first under Hess and later under Craddock, that exceeded the level of responsibility appropriate for an AA2. According to Hess, Russell's job description was reviewed through the proper channels and was determined to be appropriate. The job descriptions for the various levels of administrative assistants are sufficiently open to interpretation to create an issue of fact about whether Russell was working above her classification.

Russell does not, however, show that the decision not to reclassify her was based on racial discrimination, because none of the non-minority comparators she offers qualify as similarly situated. Russell names a number of white employees whom she believes Hess reclassified or otherwise advanced, but she does not specify how they were similarly situated to her other than that they were supervised by Hess. Although "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated . . . the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear*, 154 F.3d 344, 352 (6th Cir. 1998) (internal citations and quotations omitted) (emphasis in original). Although Russell need not demonstrate that these employees were similarly situated to her in every respect, she would need to show that they performed tasks roughly similar to her own and that they were given classifications higher than hers.

Russell does supply details about Barbee's reclassification, a circumstance Russell is time barred from raising. Even so, the facts she recounts indicate that Barbee was not similarly situated to Russell. Prior to her reclassification, Barbee was a Training Supervisor and had duties distinctly different from Russell's. Moreover, Barbee's reclassification was lateral, while Russell sought an upward reclassification.

Although Russell may have been entitled to a reclassification, she has not shown that her employer's failure to reclassify her was based on race because she has not identified any similarly situated non-minority employees who were treated differently.

Russell also faces difficulties in her failure-to-promote claim, because she did not apply for any of the positions for which she was passed over. Russell objects to the circumstances under which three women in her office were hired for jobs Russell would have liked to fill, but none of the situations allows her to make a clear case under the four-prong test. Applying the *McDonnell Douglas* standard to a failure to promote claim, the plaintiff must show that: "(1) [s]he is a member of a protected class; (2) [s]he applied and was qualified for a promotion; (3) [s]he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000).

Russell's allegations do not fit neatly within the *McDonnell Douglas* framework because she never applied for or was considered for any of the positions. However, the facts which she alleges

do raise the possibility that her employer intentionally avoided posting jobs for which Russell would have been qualified. But even under a version of the *McDonnell Douglas* test appropriate to the facts of Russell's situation, she would not be able to make out of claim of discrimination. For each of her allegations, Russell either fails to show that she was qualified for the job, fails to show that she was similarly situated to the person who received the job, or fails to show that the nondiscriminatory reasons given for her employer's actions were pretextual.

In July 2002, Barbee was reclassified from Training Supervisor to AA4. Russell alleges that Barbee's reclassification placed Barbee in a role that Russell could have filled had the position been posted for competitive bid. Russell admits that she was not qualified for the AA4 position as described, but she alleges that she was qualified to perform the duties Barbee actually performed, duties which Russell claims differed substantially from the duties put forth in the position description.

Russell's claim hangs on establishing either that Hess made Barbee's job description intentionally inaccurate in order to exclude Russell or that Hess did not post the position in order to exclude Russell. She does not establish either point. Russell's assertions—that Barbee's real duties were not those listed in her position description and that Russell herself was qualified to perform Barbee's actual duties—are conjectural and conclusory, and Russell "cannot rely on conjecture or conclusory accusations" to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

Even if Russell were to establish a prima facie case with regard to Hess's decision not to post the job, nothing in the record, other than Russell's conclusory allegations, suggests that Hess's explanation for the decision is pretextual. If Russell establishes a prima facie case, the burden shifts to her employer to give a nondiscriminatory reason for its actions. *Dews*, 231 F.3d at 1021. The burden then shifts back to Russell to show that her employer's proffered reasons are pretextual. *Id.* With regard to his decision not to post the AA4 position for application, Hess explained that the reason for reclassifying Barbee was not that the division needed a new employee with the revised position description but that the revised description better matched the duties Barbee already performed. Russell does not present evidence to cast doubt on this plausible explanation.

Similar analysis applies to Russell's claims about Weis's AA3 position. Even if Russell were to establish a prima facie case, she does not establish that Hess's explanation for Weis's transfer—that it was made as part of a general effort to save the jobs of employees in a downsizing division—is pretextual.

Neither does Russell overcome summary judgment with regard to her employer's decision to hire Magazine for the Management Analysts Supervisor 2 position. Even assuming Russell was otherwise qualified for the position, she does not show that Hess's reason for adding the disqualifying PSMQs had anything to do with her race. Craddock, the African-American woman primarily responsible for adding the PSMQs, explained how these specific qualifications related to the job function. Russell's conclusory assertion that the real reason for the PSMQs was to exclude her based on her race is not sufficient to overcome summary judgment.

Fundamentally, Russell does not show that race motivated any of the workplace decisions of which she complains. In each situation, either she does not show that those treated differently from her were similarly situated to her, or her employer can offer a valid, race-neutral reason for the decision. Summary judgment was appropriate on Russell's discrimination claims.

**B.**

None of Russell's claims of retaliation are sufficient to make out a prima facie case. She either fails to establish that her employer actually took any adverse action against her or fails to establish that the adverse action was causally linked to her EEOC claim. Russell first mentions Craddock's harassment complaint. Craddock's complaint ultimately resulted in an investigation by ODAS and a finding that Russell was within her rights to file various charges and complaints against Craddock. Russell was not harmed but rather was vindicated by this process. To establish a prima facie case of retaliation, Russell must show not only that she "engaged in a protected activity" and that her "employer knew of the exercise of the protected right," but also that "an adverse employment action was subsequently taken against" her and that "there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Conducting an investigation and issuing a report in Russell's favor is not an action adverse to Russell.

Russell next points to the Deputy State CIO's "performance expectations" memo. Russell, who repeatedly contacted management with various complaints about her work environment, can

hardly complain that her employer issued a response addressing some of the very concerns she raised. The fact that her employer's evaluation of the problem differed from Russell's does not make her employer's action materially adverse. In order to establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Sante Fe Ry. Co.*, 548 U.S. 53, 68 (2006). A reasonable employee would not be dissuaded from making a charge of discrimination by the knowledge that her employer might evaluate her situation and respond, albeit in a manner not fully to the employee's liking.

Finally, Russell alleges that Magazine gave her a negative performance review. Russell asserts, but does not attempt to demonstrate, that this review was linked to her EEOC claim. While Russell may have been dismayed by the review, the act of filing an EEOC claim does not immunize her from all negative feedback in her workplace. To survive summary judgment, she must show a causal connection between the EEOC claim and the action that she alleges was retaliatory.

Summary judgment is appropriate on the issue of retaliation.

## C.

Summary judgment is also appropriate on the issue of hostile work environment. Russell's claim stems from the fact that the ODAS investigation of Craddock's complaint revealed that several of Russell's co-workers avoid speaking to her. Russell has not alleged that her co-workers'

comments were based upon or motivated by race or religion, an element of any hostile work environment claim. *Hafford*, 183 F.3d at 512 (enumerating the elements of a prima facie case). Moreover, mere social avoidance without more is not the kind harm that gives rise to a claim. Court's are instructed to examine the "severity" of the allegedly hostile behavior, including "whether it is physically threatening or humiliating." *Hafford*, 183 F.3d at 512. The circumstances Russell asserts are mild when evaluated by this standard.

**D.**

The nature of Russell's harms do not make her a candidate for injunctive relief. Russell alleges a number of harms—for instance, that her employer exposes her to disproportionate discipline and refuses to allow her to remain in her workspace after the end of her workday—all of which are harms remediable through damages. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theaters v. Westover*, 359 U.S. 500, 506-07 (1959). The decision to grant or deny injunctive relief is within the sound discretion of the district court. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). The district court correctly noted that Russell's alleged harms could be fully addressed through standard Title VII remedies and therefore that injunctive relief was not appropriate.

**III.**

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to ODAS and George Hess and denying injunctive relief to Carolyn Russell.